## A. SHOEFERCATER *v.* THE STATE.

1. THEFT OF CATTLE — EVIDENCE. — In a trial for theft of cattle, the State proved the ownership as alleged. The defendant adduced testimony tending to prove that he purchased the animals from one A., not the owner; and, in further proof of the purchase, offered an unrecorded bill of sale, entirely in the handwriting of an attesting witness, and not proved to be the act of A. *Held*, properly excluded, on objection of the State.

2. SAME — CHARGE OF COURT. — The jury were instructed for acquittal if they found that the accused purchased the animals from A. in good faith, whether he took a bill of sale or not; but that, if the sale was not in good faith, but made to cover a fraudulent taking, it was no defence. *Held*, a proper question for the jury, and fairly presented for their determination.

3. SAME — LIMITATION. — Trying an indictment for theft, which was filed March 6, 1877, the court charged that the offence was not barred by limitation if it was committed within five years preceding the *13th* of March, 1877. *Held*, erroneous, because this warranted a conviction if the offence was committed after the filing of the indictment, — *i. e.*, between March 6 and 13, 1877.

4. TIME is not material, except it be of the essence of the offence charged, and in general the commission of the offence need not be proved as of the date alleged; but when a limitation is prescribed for presentation of an indictment, the time alleged must be within the time limited, and not an impossible day, or a day subsequent to the filing of the indictment.

Appeal from the District Court of Blanco. Tried below before the Hon. L. W. Moore.

The opinion states the case.

*W. W. Martin*, for the appellant.

*George McCormick*, Assistant Attorney-General, for the State.

Ector, P. J. The appellant was indicted at the March term, A. D. 1877, of the District Court of Blanco County, for the theft of two oxen. The indictment charges that the oxen were stolen by appellant on August 1, 1876. He was tried and convicted at the September term, A. D. 1878, of said court, and his punishment was assessed at two years' confinement in the penitentiary.

Defendant made a motion for a new trial, which was over-ruled. He has appealed the cause to this court, and has assigned the following errors:

"1st. The court erred in excluding from the jury the instrument of writing set out and described in defendant's bill of exceptions.

"2d. The court erred in its charge to the jury, in the latitude given them on the question of time as to when the offence was committed.

"3d. The court erred in the second section of the charge, which was as follows: 'If you believe the defendant did buy the animals from another in good faith, whether he took a bill of sale or not, he is not guilty. But if you believe, from all the circumstances surrounding the transaction in proof, that the sale was not made in good faith, but only to cover a fraudulent taking, then such sale would be no defence.'

"4th. The court erred in the third section of the charge, in not requiring the jury to find that the oxen were taken

from the possession of the owner by the defendant, or from the possession of some one holding the same for him; and in the latitude given to the jury as to the question of time.

" 5th. The court erred in overruling defendant's motion for new trial."

Besides the errors specified in the first, second, third, and fourth assignments, the defendant, in his motion for new trial, insists that the venue was not proven, and that the charge of the court to the jury failed to give the law applicable to the case under the facts proved.

The statement of facts shows that a yoke of oxen, the property of the person named in the indictment as their owner, suddenly disappeared from their accustomed range about the month of August, 1875. They ranged near the house of their owner, on Little Blanco, in Blanco County. The said owner of the oxen testified that he never sold them to anybody, and that he never authorized the defendant, or any one else, to take or sell them. The owner never got his oxen again.

About the time that they disappeared, as before stated, they were seen in possession of defendant, who claimed and sold them as his property. The theory of the defence is that he purchased them in good faith from one G. C. Arthur, trading his horse for them. In support of this defence, he offered in evidence a certain instrument in writing, which, on its face, purports to be a bill of sale from Arthur to defendant for the oxen. After the defence had first examined one Andrew Williamson (the only witness introduced by the defendant) in regard to the execution of the instrument, the county attorney objected to the reading of the bill of sale to the jury because it was not proven, and the court sustained his objection. We do not believe that the court erred in excluding this evidence from the jury. The instrument offered in evidence had not been recorded. The execution of it by Arthur, or by his authority, had not

been proved. The proof shows that the entire instrument was in the handwriting of the attesting witness, Talbert, and no authority is shown from Arthur to Talbert to sign his (Arthur's) name to the same.

We make the following extracts from the testimony of the witness Williamson. He says : " In the summer of 1875, one evening a man came to where I had a herd of cattle, about two miles from my father's house, with a yoke of steers, and wanted to trade them to me. I told him I did not want to buy them. I drove my cattle home to my father's house ; when we got to the house, defendant was there. I live in Hays County, with my father, at Purgatory Springs. The man that had the steers called himself Arthur. I did not know him ; never saw him before, nor have I ever seen him since. Arthur let defendant have the steers, and defendant let him have his pony. Arthur led defendant's pony off, and left the steers. I do not know how defendant and Arthur traded. I did not hear the trade between them." This witness describes the oxen as of red color, and one of them as having the same brand as the brand proved by all the State's witnesses to be on one of the stolen animals. Williamson also testifies that he did not know whether the other ox was branded or not. The jury evidently either did not believe the testimony of the witness Williamson, or believed that it was a sham trade between the person calling himself Arthur and the defendant. This disposes of the first error assigned.

The next point is as to whether the jury were given too much latitude by the charge of the court on the question of time. We will pass this proposition for the present. The same question is presented by the defendant in the fourth error assigned, and we will consider the two propositions together.

It is sufficient for us to say that the portion of the charge of the court which is copied into the third error assigned is

unexceptionable, and sets forth the law applicable to the case with great fairness to the defendant. It certainly is as favorable to the defendant as he was entitled to, and has direct application to the evidence. It was a proper question to be left to the jury to determine whether the defendant traded with Arthur for the oxen in good faith, or whether the transaction between them was only a device to cover a fraudulent taking on their part.

This brings us to the most material questions presented in the record. The third subdivision of the charge of the court, if it is correctly copied in the transcript before us, is as follows : " But if you believe the defendant did, within five years preceding March 13th, 1877, fraudulently take two oxen, the property of one Carl Schitz, or either of them, in this county and State, without his consent, with intent to deprive him of the value of same, and to appropriate it to his own use, then he is guilty, and you will so find, and assess his punishment by confinement in the penitentiary not less than two nor more than five years."

We believe that the above instruction is erroneous, for two reasons : first, because it does not instruct the jury that they must find that the oxen were taken by the defendant *from the possession of their owner, or from the possession of some one holding the same for the owner,* before they can find defendant guilty ; and, second, because the jury are not properly instructed as to the time within which they must find that the offence was committed.

In a case of theft of cattle, which is a felony, the prosecution may prove that the offence was committed at any time within five years next preceding the indictment. Pasc. Dig., art. 2650. The indictment, as shown by the file-mark, was presented by the grand jury on March 6, 1877, and by this charge of the court the jury are not limited to five years next before the filing of the indictment, but are directed by the court to go back five years preceding March 13, 1877, which would authorize them to find that

the offence was committed seven days subsequent to the indictment.

As a general rule, the prosecuton is not required to prove that the offence was committed at the exact time alleged in the indictment. Time is not material, except when of the essence of the offence. When a time is limited by the statute for preferring an indictment, the time laid should appear within the time limited. An indictment alleging the offence to have been committed on an impossible day, or a day subsequent to the indictment, is defective. There is a class of cases in which time is not material. See Arch. Cr. Pl. 370; Whart. Cr. Law, secs. 274, 275. The offence of which defendant is charged is not embraced within it.

We do not believe the charge of the court, taken as a whole, corrects the errors which we have herein specified. It is a matter of the highest importance to a defendant who is on trial for an offence involving both character and liberty that the court should correctly charge the law to the jury. The objections to the charge which we are discussing were first called to the attention of the court below by defendant in his motion for a new trial.

For these errors committed by the court in the charge to the jury, the judgment is reversed and the cause remanded.

*Reversed and remanded.*